Victor M. Sher, SBN 96197
Todd E. Robins, SBN 191853
Esther L. Klisura, SBN 221171
Jed J. Borghei, SBN 257049
SHER LEFF, LLP
450 Mission Street, Suite 400
San Francisco, CA 94105
Telephone:   (415) 348-8300
Facsimile:   (415) 348-8333
Email:       vsher@sherleff.com
             trobins@sherleff.com
             eklisura@sherleff.com
             jborghei@sherleff.com

Attorneys for Plaintiff CITY OF POMONA

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF POMONA,<br><br>             Plaintiff,<br><br>     vs.<br><br>SQM NORTH AMERICA CORPORATION,<br><br>             Defendant. | CASE NO. 11-CV-00167-RGK<br><br>**PLAINTIFF CITY OF POMONA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial Date:   January 10, 2012<br>Time:         9:00 a.m.<br>Courtroom:    850<br>Judge:        Hon. R. Gary Klausner |

---

# **TABLE OF CONTENTS**

I.   CLAIMS AND DEFENSES (L.R. 16-4.1) ...................................................1

    A.   Summary of Plaintiff's Claim..............................................................1

    B.   Elements of Plaintiff's Strict Products Liability/Design Defect
        Claim .................................................................................................1

        1.   Consumer Expectations Test ....................................................2

        2.   Risk-Benefit Test ....................................................................2

    C.   Key Evidence Supporting Plaintiff's Claim .........................................3

        1.   Defendant Imported and/or Distributed the Subject
            Fertilizers ................................................................................3

        2.   Design Defect Under the Consumer Expectations Test ...........3

        3.   Design Defect Under the Risk-Benefit Test.............................4

        4.   Substantial Factor Causation ...................................................5

        5.   Injury.......................................................................................6

    D.   Summary of Defendant's Affirmative Defenses ...............................7

    E.   Elements of, and Evidence to Rebut, Defendant's Affirmative
        Defenses ...........................................................................................8

    F.   Anticipated Evidentiary Issues ......................................................19

    G.   Issues of Law ...............................................................................22

II.  BIFURCATION OF ISSUES (L.R. 16-4.3) .............................................23

III. JURY TRIAL (L.R. 16-4.4) ....................................................................24

IV.  ATTORNEYS' FEES (L.R. 16-4.5) .........................................................24

V.   ABANDONMENT OF ISSUES (L.R. 16-4.6).........................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Boyle v. United Technologies Corp.*
    487 U.S. 500 (1988) .................................................................................. 8

*Desert European Motorscars, Ltd. v. Desert European Motorcars, Inc.*
    2011 WL 3809933 (C.D. Cal. Aug. 25, 2011) ....................................... 8

*Imperial v. Castruita*
    418 F. Supp. 2d 1174 (C.D. Cal. 2006) ............................................... 18

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.*
    676 F. Supp. 2d 139 (S.D.N.Y. 2009) ................................................ 11

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
    Practices, and Products Liability Litig.*
    754 F.Supp.2d 1145 (C.D. Cal. 2010) ................................................ 16

*J & J Sports Productions, Inc. v. Vizcarra*
    2011 WL 4501318 (N.D. Cal. Sept. 27, 2011) ................................... 18

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*
    312 U.S. 270 (1941) ............................................................................ 17

*Mejdrech v. Lockformer*
    2003 WL 22078388 (N.D. Ill. Sept. 9, 2003) .................................... 22

*Wolfson v. Brammer*
    616 F.3d 1045 (9th Cir. 2010) ............................................................ 19

**CALIFORNIA CASES**

*Barker v. Lull Engineering Co., Inc.*
    20 Cal.3d 413, 573 P.2d 443 (1978) ..................................................... 2

*Buccery v. General Motors Corp.*
    60 Cal.App.3d 533, 132 Cal.Rptr. 605 (1976) ................................... 14

*Bunch v. Hoffinger Industries, Inc.*
    123 Cal.App.4th 1278, 20 Cal.Rptr.3d 780 (2004) ............................ 15

*Carlin v. Superior Court*
    13 Cal.4th 1104, 56 Cal.Rptr.2d 1347 (1996) ...................................................... 13

*Davies v. Krasna*
    14 Cal.3d 502, 121 Cal.Rptr. 705 (1975) ............................................................ 11

*Drust v. Drust*
    113 Cal.App.3d 1, 169 Cal.Rptr. 750 (1980) ...................................................... 13

*Elsworth v. Beech Aircraft Corp.*
    37 Cal.3d 540, 208 Cal.Rptr. 874 (1984) .......................................................... 14

*Engalla v. Permanente Medical Group, Inc.*
    15 Cal.4th 951, 64 Cal.Rptr.2d 843 (1997) ....................................................... 12

*Fladeboe v. American Isuzu Motors, Inc.*
    150 Cal.App.4th 42, 58 Cal.Rptr.3d 225 (2007) ................................................ 17

*Hodges v. Superior Court*
    21 Cal.4th 109, 86 Cal.Rptr.2d 884 (1999) ....................................................... 15

*Honeywell v. Workers' Comp. Appeals Bd.*
    35 Cal.4th 24, 105 P.3d 544 (2005) ................................................................... 12

*Johnson v. American Standard, Inc.*
    43 Cal.4th 56, 179 P.3d 905 (2008) ................................................................... 19

*Mancuso v. Southern Cal. Edison Co.*
    232 Cal.App.3d 88, 283 Cal.Rptr. 300 (1991) ................................................... 16

*Milwaukee Electric Tool Corp. v. Superior Court*
    15 Cal.App.4th 547, 19 Cal.Rptr.2d 25 (1993) .................................................. 10

*Olszewski v. Scripps Health*
    30 Cal.4th 798, 69 P.3d 927 (2003) ................................................................... 14

*Perez v. VAS S.p.A.*
    188 Cal.App.4th 658, 115 Cal.Rptr. 3d 590 (2010) .......................................... 15

*Seaboard Music Co. v. Germano*
    24 Cal.App.3d 618, 101 Cal.Rptr. 255 (1972) .................................................... 9

*Thompson v. Williams*
    211 Cal.App.3d 566, 259 Cal.Rptr. 518 (1989) ................................................. 10

*Wells Fargo Bank v. Bank of America*
      32 Cal.App.4th 424, 38 Cal.Rptr.2d 521 (1995) .......................................... 12, 13

**STATUTES**

Fed. R. Civ. P. Rule 30(b)(6)............................................................................Passim

Fed. R. Civ. P. 37(c)(2) ........................................................................................ 24

Fed. R. Civ. P. 81(c)(3)(A) .................................................................................. 24

Cal. Code Civ. P. § 592 ......................................................................................... 24

**OTHER AUTHORITIES**

CACI 405 ............................................................................................................... 13

CACI 1203 ............................................................................................................... 2

CACI 1204 .......................................................................................................... 2, 3

CACI 1244 ............................................................................................................. 19

CACI 3931 ............................................................................................................... 9

Pursuant to Local Rule 16-4 and the Court's March 22, 2011 Order for Jury Trial, plaintiff City of Pomona ("City") submits this memorandum of contentions of fact and law, addressing the contentions of the parties with regard to the trial scheduled to commence on January 10, 2012.

## I.   CLAIMS AND DEFENSES (L.R. 16-4.1)

### A.   Summary of Plaintiff's Claim

The City asserts a single cause of action in this case: strict products liability under California law based on a design defect.  Specifically, the City alleges that defendant SQM North America Corporation ("Defendant") imported and distributed nitrate fertilizers manufactured in Chile that were defective in design because they contained perchlorate, a harmful and unnecessary impurity. Perchlorate has been detected in the City's groundwater production wells at concentrations in excess of California's safe drinking water standard, or Maximum Contaminant Level ("MCL"), for perchlorate.  Because the City's wells have perchlorate in excess of the MCL, the City has been forced to incur, and will continue to incur, millions of dollars to remove the perchlorate from its water. Isotopic "fingerprint" analyses of the perchlorate in the City's wells, groundwater modeling simulations, and extensive historical evidence regarding the use of Chilean nitrate fertilizers on citrus groves in the Pomona region all point toward Chilean nitrate products – which were imported during the relevant time period solely by Defendant – as the source of the perchlorate in the City's wells.

### B.   Elements of Plaintiff's Strict Products Liability/Design Defect Claim

California law provides two ways for proving strict products liability based on a design defect: (1) the "consumer expectations" test, which considers whether a product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner"; and (2) the "risk-benefit" test, which considers whether "the benefits of the challenged design outweigh the

---

risk of danger inherent in such design." *Barker v. Lull Engineering Co., Inc.*, 20 Cal.3d 413, 418, 573 P.2d 443, 446 (1978).

## 1.   <u>Consumer Expectations Test</u>

The elements required to establish the City's claim for strict liability based on a design defect under the consumer expectations test are:

(1)   Defendant imported and/or distributed Chilean nitrate fertilizer products (the "Products");

(2)   the Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way;

(3)   the City was harmed; and

(4)   the Products' failure to perform safely was a substantial factor in causing the City's harm.

*See* CACI 1203 (Strict Liability – Design Defect – Consumer Expectation Test – Essential Factual Elements).

## 2.   <u>Risk-Benefit Test</u>

The elements required to establish the City's claim for strict liability based on a design defect under the risk-benefit test are:

(1)   Defendant imported and/or distributed Chilean nitrate fertilizer products (the "Products");

(2)   the City was harmed; and

(3)   the Products' design was a substantial factor in causing harm to the City.

*See* CACI 1204 (Strict Liability – Design Defect – Risk-Benefit Test – Essential Factual Elements – Shifting Burden of Proof).  Once the City proves these three elements, the burden shifts to Defendant to prove that the benefits of the fertilizers' design outweigh the risks of the design, considering: (a) the gravity of the potential harm resulting from the use of the fertilizers; (b) the likelihood that this harm

would occur; (c) the feasibility of an alternative safer design at the time of

manufacture; (d) the cost of an alternative design; and (e) the disadvantages of an

alternative design. *Id*.

### C.   Key Evidence Supporting Plaintiff's Claim

#### 1.   <u>Defendant Imported and/or Distributed the Subject Fertilizers</u>

Evidence the City will introduce evidence to prove that Defendant imported

and/or distributed the subject fertilizers, including:

- contracts relating to Defendant's importation and distribution of Chilean nitrate fertilizers in the 1930s, 1940s, and 1950s; and
- testimony of Defendant's Rule 30(b)(6) designee Patricio de Solminihac regarding Defendant's importation and distribution of Chilean nitrate fertilizers in the 1930s, 1940s, and 1950s.

#### 2.   <u>Design Defect Under the Consumer Expectations Test</u>

The City will introduce evidence to establish a design defect under the

consumer expectations test, including:

- testimony of agricultural expert F.J. Sundstrom regarding the objective features of Defendant's fertilizers and the intended use of those products;
- testimony of Defendant's Rule 30(b)(6) designee Patricio de Solminihac that Defendant's product labeling and advertising did not disclose the presence of perchlorate in the products;
- testimony of plant nutrition expert Charles Sanchez that perchlorate is not a plant nutrient and provided no benefit to farmers as a fertilizer ingredient;
- advertisements from the 1930s, 1940s, and 1950s promoting Defendant's products as "safe" and "natural";

///

- testimony of fourth generation California citrus farmer Ted Batkin regarding farmers' safety expectations for fertilizers; and

- Defendant's documents regarding customer reactions when it became known in 1999 that Defendant's fertilizers can cause perchlorate contamination in groundwater.

### 3. Design Defect Under the Risk-Benefit Test

If the Court precludes the City from proceeding under the consumer expectations test, the City will introduce evidence to oppose Defendant's risk-benefit evidence, including:

- testimony of plant nutrition expert Charles Sanchez that perchlorate is not a plant nutrient and in large enough quantities can be toxic to plants;

- testimony of geochemistry and isotope expert Neil Sturchio regarding the chemical properties of perchlorate that make it a widespread groundwater contaminant, the prevalence of perchlorate contamination attributable to historical Chilean nitrate fertilizer use, and how modest reductions in perchlorate content in Defendant's fertilizers would have resulted in sub-MCL levels of perchlorate in the City's wells;

- testimony of former U.S. Environmental Protection Agency employee Edward Urbansky regarding the prevalence of perchlorate contamination attributable to historical Chilean nitrate fertilizer use and Defendant's admissions to EPA regarding the feasibility and cost of reducing perchlorate in Chilean nitrate fertilizers in or around 2000;

- testimony of toxicologist Gay Goodman regarding the health risks associated with exposure to low levels of perchlorate in water;

///
///

- testimony of Defendant's Director Eugenio Ponce and published literature reports about reductions of perchlorate content in Chilean fertilizers during the first half of the 20th century; and

- testimony of Defendant's Rule 30(b)(6) designee Armin Lauterbach regarding the process used to manufacture Chilean nitrate fertilizers and changes to that process that were implemented in or 2000 to reduce the perchlorate content in Defendant's fertilizers and related costs.

### 4.    Substantial Factor Causation

The City will introduce evidence to prove substantial factor causation, including:

- testimony of geochemistry and isotope expert Neil Sturchio regarding the isotopic composition of the perchlorate in the City's wells compared to the isotopic composition of perchlorate in Chilean nitrate fertilizers, perchlorate indigenous to the Southwestern United States, and synthetic perchlorate;

- the State of California's fertilizer tonnage reports from the 1930s, 1940s, and 1950s showing that hundreds of thousands of tons of Chilean nitrate fertilizers were imported into California during the relevant period;

- advertisements from the 1930s, 1940s, and 1950s for Defendant's products showing that the products were promoted for use on citrus crops in California;

- testimony from Defendant's Rule 30(b)(6) designee Patricio de Solminihac regarding Defendant's importation and distribution of Chilean nitrate fertilizers in the 1930s, 1940s, and 1950s ;

///

///

- aerial photographs of Pomona taken in the 1930s, 1940s, and 1950s and testimony of aerial photography expert Randall Brady regarding the extent of citrus acreage depicted in those photos;

- testimony of Defendant's Director Eugenio Ponce regarding the establishment and purpose of Defendant's Los Angeles sales office;

- testimony of agricultural expert F.J. Sundstrom regarding the widespread use of Defendant's fertilizers in and around Pomona; and

- testimony of hydrogeology expert Stephen Wheatcraft regarding the zone of influence and contaminant travel times.

5.   **Injury**

The City will introduce evidence to prove its injury and damages, including the following:

- testimony of geochemistry expert Neil Sturchio regarding physical and chemical characteristics of perchlorate and the difficulty of removing it from water;

- testimony of City personnel regarding, and water quality data demonstrating, the presence of perchlorate in the City's groundwater wells at concentrations above the MCL;

- testimony of City personnel regarding the City's response to the perchlorate MCL, its decision to construct a perchlorate treatment plant, and the costs to design and construct a perchlorate treatment plant;

- City documents regarding the City's response to the perchlorate MCL, its decision to construct a perchlorate treatment plant, and the costs to design and construct a perchlorate treatment plant;

///
///
///

- testimony of an as-yet-undesignated representative of the California Department of Public Health regarding the purpose, basis and mandatory nature of the perchlorate MCL[1];

- testimony of water treatment expert Ken Wilkins regarding costs incurred by the City in responding to the perchlorate MCL and costs that will be incurred to operate and maintain the forthcoming perchlorate treatment plant into the future; and

- testimony of hydrogeology expert Stephen Wheatcraft regarding the predicted minimum duration of perchlorate impacts at City wells.

### D.   Summary of Defendant's Affirmative Defenses

Defendant has asserted 38 "affirmative defenses" to the City's claim.  Many of these are not affirmative defenses at all, but are simply a denial of the City's allegations or attempts to negate an element of the City's claim.  Some of the defenses are simply inapplicable to the City's strict liability claim, the sole cause of action remaining.  *See, e.g.,* Eighth Affirmative Defense ("no legal duty to the City"), Thirteenth Affirmative Defense ("injury…not reasonably foreseeable").  Several of the affirmative defenses are duplicative.  *See, e.g.,* Fourth Affirmative Defense ("SQMNA's conduct was not cause in fact of any injuries"), Seventh Affirmative Defense (no "proximate[] cause"); Twenty-First Affirmative Defense ("any acts or omissions by SQMNA were not a substantial factor in bringing about the City's alleged damages" and "were superseded by the acts of omissions of the City and …third parties").  Other affirmative defenses are inconsistent.  *See, e.g.,* Tenth Affirmative Defense (action "barred in whole or in part by the applicable

---

[1] Concurrent with this memorandum, the City is filing a Request for Judicial Notice and Instruction to the Jury, which sets forth nine judicially noticeable facts relating to drinking water regulations.  If the Court grants the request for judicial notice, the City will rely on those judicially noticed facts in lieu of presenting testimony from this witness.

statute of limitations"), Twenty-Seventh Affirmative Defense ("claims are not ripe for adjudication").

In the parties' Local Rule 16-2 meeting of counsel, the City's counsel asked which affirmative defenses Defendant intends to pursue.  On December 2, 2011, Defendant advised that it would pursue all but its Eleventh Affirmative Defense for offset and its Twenty-Sixth Affirmative Defense for failure to exhaust administrative remedies.  Accordingly, an analysis of the Defendant's 36 remaining affirmative defenses is set forth below.

### E.    Elements of, and Evidence to Rebut, Defendant's Affirmative Defenses

<u>First Affirmative Defense (failure to state a claim)</u>

"[F]ailure to state a claim is an assertion of a defect in Plaintiff's prima facie case, and not an affirmative defense."  *Desert European Motorscars, Ltd. v. Desert European Motorscars, Inc*., 2011 WL 3809933, *2 (C.D. Cal. Aug. 25, 2011) (citation omitted).  The City's evidence in support of its prima facie case is set forth above in section I(C).

<u>Second Affirmative Defense ("Federal, State and/or local authorities")</u>

This appears to be an amalgamation of different possible defenses, such as preemption (addressed below in response to Defendant's Nineteenth Affirmative Defense), the purported "compliance with all applicable laws" defense (addressed below in response to Defendant's Sixteenth Affirmative Defense), and possibly the "government contractor defense" articulated in *Boyle v. United Technologies Corp*., 487 U.S. 500 (1988).

With respect to the government contractor defense, the City sought discovery from Defendant of all facts supporting such a defense.  In response, Defendant stated unequivocally: "SQMNA is not going to assert this defense at trial."  *See* Declaration of Esther L. Klisura in Support of Plaintiff City of Pomona's Motions in Limine (Docket No. 115), Ex. 11 (Responses to

Interrogatory Nos. 32-33).  The City is not aware of any state or federal regulation of fertilizer content now or in the past that would give rise to any kind of preemption or similar defense.

Third Affirmative Defense ("City's own actions or actions of third parties")

This is not an affirmative defense.  Rather, it appears to be an assertion that the City cannot prove the causation element of its design defect cause of action. The City's causation evidence of its injury is set forth above in section I(C)(4).

Fourth Affirmative Defense (Defendant "not cause in fact of any injuries")

This is not an affirmative defense.  Rather, it appears to be an assertion that the City cannot prove the causation element of its design defect cause of action. The City's causation evidence is set forth above in section I(C)(4).

Fifth Affirmative Defense ("not entitled to recover…attorneys' fees and costs")

This is not an affirmative defense.  Moreover, the City is not seeking attorneys' fees or costs at this time.  *See* section IV below.

Sixth Affirmative Defense (failure to "mitigate damages")

To establish this defense, Defendant has the burden of proving the portion of the City's damages that could have been avoided with reasonable efforts or expenditures, in light of the circumstances facing the City at the time it incurred those damages.  *See* CACI 3931 (Mitigation of Damages (Property Damages)); *see also Seaboard Music Co. v. Germano*, 24 Cal.App.3d 618, 623, 101 Cal.Rptr. 255, 258 (1972) ("The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights.")  If Defendant pursues this defense at trial, the City will offer the following categories of evidence to oppose it:

- evidence of the mandatory nature of MCLs;
- testimony of City personnel regarding its response to perchlorate contamination and decision to build a new perchlorate treatment plant; and

---

- testimony of water treatment expert Ken Wilkins. regarding available treatment technologies for removing perchlorate from water and the City's past and projected costs for removing perchlorate from its wells.

Seventh Affirmative Defense (no "proximate[] cause")

This is not an affirmative defense.  Rather, it appears to be an assertion that the City cannot prove the causation element of its design defect cause of action. The City's causation evidence is set forth above in section I(C)(4).

Eighth Affirmative Defense ("no legal duty to the City")

This is not an affirmative defense, nor is it an assertion of a defect in the City's prima facie case because legal duty to the particular plaintiff is not a required element of strict products liability case.  Instead, "a manufacturer's duty to provide defect-free products is inherent" in such a cause of action.  *Milwaukee Electric Tool Corp. v. Superior Court*, 15 Cal.App.4th 547, 559, 19 Cal.Rptr.2d 25, 33 (1993).

Ninth Affirmative Defense (satisfaction, discharge or excuse)

To establish this defense, Defendant has the burden of proving: "(1) that there was a 'bona fide dispute' between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue." *Thompson v. Williams*, 211 Cal.App.3d 566, 571, 259 Cal.Rptr. 518, 521 (1989). If Defendant pursues this defense, the City will offer the following evidence to oppose it:

- testimony of City personnel that Defendant has not tendered any payment to the City for this dispute.

///

---

<u>Tenth Affirmative Defense ("statute of limitations")</u>

To establish a statute of limitations defense, Defendant has the burden of proving that the City suffered appreciable harm with respect to each well for which it claims damages before October 15, 2007. *See Davies v. Krasna*, 14 Cal.3d 502, 514, 121 Cal.Rptr. 705, 713 (1975) (under California law, a cause of action begins to accrue for statute of limitations purposes when the plaintiff suffers "appreciable and actual harm"); *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 676 F. Supp. 2d 139, 149 (S.D.N.Y. 2009) ("[f]or statute of limitations purposes contamination sites must be analyzed on a site-by-site basis" under California law). The City will offer the following categories of evidence to oppose Defendant's statute of limitations defense:

- testimony of designee from California Department of Public Health, or judicially noticed facts, regarding the purpose and mandatory nature of the perchlorate MCL, and the fact that Public Health Goals, Action Levels, and other advisory standards are not drinking water standards;

- testimony of City personnel establishing that the City's operational decisions are guided by MCLs and that the City did not shut down any wells because of, or install any treatment for, perchlorate until after the October 18, 2007 promulgation of the perchlorate MCL, and did not incur any expenses to respond to perchlorate prior to that date;

- City documents establishing that the City's operational decisions are guided by MCLs and that the City did not shut down any wells because of, or install any treatment for, perchlorate until after the October 18, 2007 promulgation of the perchlorate MCL, and did not incur any expenses to respond to perchlorate prior to that date; and

///
///

- testimony of agricultural expert F.J. Sundstrom and hydrogeologist Stephen Wheatcraft showing that the perchlorate in the City's wells are the result of separate and distinct pulses of perchlorate.[2]

Eleventh Affirmative Defense (Defendant "entitled to offsets")

Withdrawn.

Twelfth Affirmative Defense ("waiver, estoppels and/or laches")

To establish a defense based on waiver, Defendant has the burden of proving a "voluntary relinquishment of a known right." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 983, 64 Cal.Rptr.2d 843, 863 (1997). If Defendant pursues this defense, the City will offer testimony from City personnel that the City has not voluntarily relinquished any known right with respect to the perchlorate contamination that is the subject of this case.

To establish a defense based on equitable estoppel, Defendant has the burden of proving: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Honeywell v. Workers' Comp. Appeals Bd.*, 35 Cal.4th 24, 37, 105 P.3d 544, 550 (2005) (citation omitted). The City is not aware of any conduct that could possibly form the basis of an equitable estoppel defense, much less conduct that Defendant relied on to its detriment. The City reserves the right to rebut any evidence presented by Defendant on this defense.

"Laches is an unreasonable delay in asserting an equitable right, causing prejudice to an adverse party[.]" *Wells Fargo Bank v. Bank of America*, 32

---

[2] The specific facts that the City will establish are described as "Plaintiff's Additional Material Fact" Nos. 62 through 146 in the City's summary judgment opposition papers. *See* Plaintiff City of Pomona's Statement of Genuine Disputes (Docket No. 74), pp. 51-68.

Cal.App.4th 424, 439, 38 Cal.Rptr.2d 521, 530 (1995).  The doctrine of laches is "unavailable as a defense to the causes of action at law seeking money judgments." *Id*. (internal citation omitted; emphasis added).  The reason is that to "allow a laches defense in a legal action would be to override" the statute of limitations "mandated by the Legislature." *Id*. (citation omitted).  Therefore, Defendant cannot maintain a laches defense against the City's claim.

Thirteenth Affirmative Defense ("injury…not reasonably foreseeable")

It is well settled that "strict liability for design defects…potentially subject[s] [defendants] to liability for flaws in their products that they have not, and could not have, discovered." *Carlin v. Superior Court*, 13 Cal.4th 1104, 1117, 56 Cal.Rptr.2d 1347, 1354 (1996).  Therefore, lack of foreseeability is not a cognizable defense to a design defect claim.

Fourteenth Affirmative Defense (Defendant "not a proper party to the Complaint")

This is not an affirmative defense.  Instead, it appears to be a denial of the City's claim against Defendant.  The City's evidence in support of its prima facie case is set forth above in section I(C).

Fifteenth Affirmative Defense (City's "own acts of negligence")

It is unclear what affirmative defense is being raised here.  If it is a comparative negligence defense, Defendant has the burden of proving that (1) the City was negligent; and (2) the City's negligence was a substantial factor in causing its injury.  *See* CACI 405 (Comparative Fault of Plaintiff).  A comparative negligence defense requires "substantial evidence" that the plaintiff was negligent, not just "mere speculation or conjecture." *Drust v. Drust*, 113 Cal.App.3d 1, 6, 169 Cal.Rptr. 750, 753 (1980).  The City will offer the following evidence to oppose this defense:

- testimony of City personnel establishing that the City's water system has operated in compliance with applicable regulations; and
- all of the causation evidence set for above in section I(C)(4).

1  Sixteenth Affirmative Defense ("compliance with all applicable laws")

2      A manufacturer's compliance with applicable laws is <u>not</u> a cognizable

3  defense to a products liability cause of action.  *See, e.g., Elsworth v. Beech Aircraft*

4  *Corp.*, 37 Cal.3d 540, 547, 208 Cal.Rptr. 874, 691 (1984) (manufacturer's

5  compliance with federal aircraft safety regulations does not preclude liability for

6  defective design); *Buccery v. General Motors Corp.*, 60 Cal.App.3d 533, 540-41,

7  132 Cal.Rptr. 605 (1976) (compliance with federal motor vehicle safety standards

8  does not preclude liability for defective design).

9  Seventeenth Affirmative Defense (unreasonable delay in commencement of action)

10     This appears to be the same improper laches defense asserted in Defendant's

11  Twelfth Affirmative Response.  The City refers to its discussion of that defense

12  above.

13  Eighteenth Affirmative Defense (no damages)

14     This is not an affirmative defense.  It is simply a denial that the City has

15  suffered any damages.  The City's evidence of its injury and damages is set forth

16  above in section I(C)(5).

17  Nineteenth Affirmative Defense (preemption)

18     To establish preemption, Defendant has the burden of establishing that: (1)

19  Congress enacted federal law with the explicit intent to preempt state law ("express

20  preemption"); (2) Congress regulates conduct in a field that Congress intended the

21  federal government to occupy exclusively ("field preemption"); or (3) state law

22  actually conflicts with federal law ("conflict preemption").  *Olszewski v. Scripps*

23  *Health*, 30 Cal.4th 798, 814, 69 P.3d 927, 938 (2003).  Defendant has never

24  identified any basis for a preemption defense, and the City is not aware of any state

25  or federal regulation of fertilizer content now or in the past that would give rise to

26  any kind of preemption or similar defense.  The City reserves the right to rebut any

27  evidence presented by Defendant in support of this defense.

28  ///

1    <u>Twentieth Affirmative Defense ("City seeks relief…in violation of public policy")</u>

2            The City is not aware of "violation of public policy" being an affirmative

3    defense to a strict products liability cause of action.  "[L]ong-standing public

4    policy" <u>favors</u> "requiring manufacturers to bear the costs of injuries from defective

5    products."  *Hodges v. Superior Court*, 21 Cal.4th 109, 118-19, 86 Cal.Rptr.2d 884,

6    891 (1999).  This is particularly true in this case where the plaintiff is a public

7    entity seeking to recover damages to pay for the cost of protecting public health.

8    <u>Twenty-First Affirmative Defense (superseding and intervening causes)</u>

9            To establish this defense, Defendant has the burden of proving that the

10   intervening act of a third person was a substantial factor in bringing about the

11   City's injury, and the intervening act was "highly extraordinary."  *Perez v. VAS*

12   *S.p.A.*, 188 Cal.App.4th 658, 680, 115 Cal.Rptr. 3d 590, 607 (2010).   Importantly,

13   the intervening act must be "more than mere negligence on the part of the

14   intervening actor."  *Id*.  If Defendant pursues this defense at trial, the City will

15   offer the following evidence to oppose it:

16           •      Defendant's admissions that it has no evidence of its fertilizer

17                  products being altered or misused; and

18           •      all of the causation evidence set for above in section I(C)(4).

19   <u>Twenty-Second Affirmative Defense (assumption of risk)</u>

20           A plaintiff's "assumption of risk" is not a complete defense to a products

21   liability cause of action.  *Bunch v. Hoffinger Industries, Inc*., 123 Cal.App.4th

22   1278, 1301, 20 Cal.Rptr.3d 780, 798 (2004).  Instead, a showing by the defendant

23   that the plaintiff "elect[ed] to use the [defective] product with knowledge of the

24   danger posed by the defect" gives rise to a comparative negligence defense.  *Id*.  If

25   Defendant pursues this defense at trial, the City will offer the following evidence:

26           •      testimony of City personnel that the City was not a user of

27                  Defendant's fertilizer products; and

28   ///

- testimony of Defendant's Rule 30(b)(6) designee Patricio de Solminihac that Defendant's product labeling and advertising did not disclose the presence of perchlorate in the products.

Twenty-Third Affirmative Defense ("failure to name all proper parties")

This affirmative defense appears to duplicate Defendant's Thirtieth Affirmative Defense ("fail[ure] to join indispensible … parties").  Defendant has not identified, and the City is not aware of, any unnamed party who is indispensable to the adjudication of this action.  The City reserves the right to rebut any evidence introduced by Defendant in support of this defense.

Twenty-Fourth Affirmative Defense (lack of "standing")

"Standing merely requires a redressable injury that is fairly traceable to Defendants' conduct.  Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question."  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 754 F.Supp.2d 1145, 1161 (C.D. Cal. 2010).  The City refers to the evidence supporting its prima facie case in section I(C) above, which demonstrates that it has a redressable injury that is fairly traceable to Defendant's conduct.

Twenty-Fifth Affirmative Defense ("acts of God")

To establish this defense, Defendant has the burden of proving that "an unanticipated natural occurrence is the sole cause of a plaintiff's injury or damage."  *Mancuso v. Southern Cal. Edison Co.*, 232 Cal.App.3d 88, 104, 283 Cal.Rptr. 300, 310 (1991) (emphasis in original).  "The natural event must be so unusual in its proportions that it could not be anticipated by a defendant."  *Id.* (internal citation omitted).  If Defendant pursues this defense at trial, the City will respond with the causation evidence set forth above in section I(C)(4).

Twenty-Sixth Affirmative Defense (failure to "exhaust administrative remedies")

Withdrawn.

///

Twenty-Seventh Affirmative Defense ("claims are not ripe for adjudication")

To establish a defense based on lack of ripeness, Defendant must show the absence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The City refers to the evidence supporting its prima facie case in section I(C), which demonstrates that it has a substantial controversy of sufficient immediacy and reality to warrant a judgment.

Twenty-Eighth Affirmative Defense ("unclean hands")

To prevail on an unclean hands defense, Defendant has the burden of proving "unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy." *Fladeboe v. American Isuzu Motors, Inc.*, 150 Cal.App.4th 42, 56, 58 Cal.Rptr.3d 225 (2007) (citations omitted). The City is not aware of any such conduct that could possibly be attributed to the City. The City reserves the right to rebut any evidence that Defendant offers to support this defense.

Twenty-Ninth Affirmative Defense ("fail[ure] to investigate")

The City is not aware of any cognizable defense that arises from an alleged failure to investigate. The City refers to the evidence supporting its prima facie case in section I(C), as well as the evidence submitted in connection with its opposition to Defendant's pending and submitted Motion for Summary Judgment, which demonstrate that this case is the product of a diligent and reasonable investigation.

Thirtieth Affirmative Defense ("fail[ure] to join indispensible … parties")

To establish this defense, Defendant has the burden of establishing that: (1) complete relief cannot be accorded among those already party to the action; or (2) a party that has not been joined in the action has an interest in the action such that disposition of the action may (a) impair or impede the non-party's ability to protect

that interest, or (b) leave any persons already party to the action subject to substantial risk of incurring double, multiple or inconsistent obligations. *Imperial v. Castruita*, 418 F. Supp. 2d 1174, 1178 (C.D. Cal. 2006), citing Fed. R. Civ. P. 19. Defendant has not identified, and the City is not aware of, any unnamed party whose joinder is indispensable to the adjudication of this action. The City reserves the right to rebut any evidence introduced by Defendant in support of this defense.

Thirty-First Affirmative Defense ("indemnity")

"Indemnification is not an affirmative defense, 'but rather a claim that must be pleaded and proved.'" *J & J Sports Productions, Inc. v. Vizcarra*, 2011 WL 4501318, *3 (N.D. Cal. Sept. 27, 2011), citing *Norddeutscher Lloyd v. JonesStevedoring Co*., 490 F.2d 648, 650 (9th Cir. 1973). The City is not aware of any grounds for Defendant to obtain indemnification, other than perhaps insurance agreements, which Defendant has refused to produce to the City.

Thirty-Second Affirmative Defense ("fertilizer…not defective in any respect")

This is not an affirmative defense. Rather, it appears to be an assertion that the City cannot prove the design defect element of its cause of action. The City's evidence of the design defect is set forth above in section I(C)(3).

Thirty-Third Affirmative Defense ("not reasonably [sic] dangerous when made")

The City is not aware of any cognizable defense that could be based on a purported lack of danger at the time Defendant's products were made. To the extent this is an attempt to argue "foreseeability," that is not a relevant element or defense to a strict products liability claim for design defect. To the extent this is an attempt to argue that the products were altered or misused after they left Defendant's possession, Defendant has admitted in Request for Admission responses that it has no such evidence. The City reserves the right to rebut any evidence offered by Defendant to support this defense.

///

///

Thirty-Fourth Affirmative Defense ("sophisticated purchasers")

The sophisticated user defense has been recognized in failure to warn cases. *See Johnson v. American Standard, Inc.*, 43 Cal.4th 56, 64, 179 P.3d 905, 910 (2008). Assuming it applies to a design defect claim, Defendant has the burden of proving that (1) the City is a sophisticated user of Defendant's fertilizer products and that (2) the City knew or should have known of the danger of Defendant's fertilizer products. *See* CACI 1244 (Affirmative Defense – Sophisticated User). If Defendant pursues this defense at trial, the City will offer the following evidence:

- testimony of agricultural expert F.J. Sundstrom regarding intended use and users of Defendant's fertilizers; and

- testimony of Defendant's Rule 30(b)(6) designee Patricio de Solminihac that Defendant's product labeling and advertising did not disclose the presence of perchlorate in the products.

Thirty-Fifth Affirmative Defense ("mootness doctrine")

Defendant has the burden of proving: (1) that "the parties lack a legally cognizable interest in the outcome" of this action; and (2) that this action is not "capable of repetition, yet evading review." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (citations omitted). The City refers to the evidence supporting its prima facie case in section I(C), which demonstrates that the City has a valid claim for damages against Defendant.

Thirty-Sixth Affirmative Defense ("additional defenses")

This is not an affirmative defense but rather a reservation of right to assert additional defenses. Defendant has not identified any additional affirmative defenses, and any effort to do so at this late stage in the case should be rejected.

F.    **Anticipated Evidentiary Issues**

As reflected in its Motions *in Limine*, the City believes the following evidence is inadmissible:

///

- Evidence relating solely to the risk-benefit test (to the extent the Court permits the City to proceed under the consumer expectations test). *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the efficacy of Defendant's fertilizers as a whole. *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the importance of commercial fertilizers generally. *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the importance of Defendant's fertilizers during World War II. *See* Motion *in Limine* Nos. 1, 5 (Docket Nos. 99, 104).

- Evidence relating to any reductions in micronutrients caused by the reduction of perchlorate in Defendant's fertilizers. *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the economic feasibility of reducing the perchlorate content of Defendant's fertilizers in the first half of the 20th Century. *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the mechanical feasibility of reducing the perchlorate content of Defendant's fertilizers in the first half of the 20th Century. *See* Motion *in Limine* Nos. 1, 2 (Docket Nos. 99, 100).

- Evidence relating to analytical capabilities for determining the perchlorate in Defendant's fertilizers during the early 20th Century. *See* Motion *in Limine* No. 1 (Docket No. 99).

- Evidence relating to the health risks associated with exposure to perchlorate. *See* Motion *in Limine* Nos. 1, 7, 8 (Docket Nos. 99, 106, 107).

- Evidence obtained from the files or possession of Sociedad Quimica y Minera de Chile, S.A. *See* Motion *in Limine* No. 2 (Docket No. 100).

- Evidence of potential alternative sources of perchlorate in the City's groundwater wells. Evidence relating to the feasibility of reducing

perchlorate in the first half of the 20th Century.  *See* Motion *in Limine* No. 3 (Docket No. 101).

- Testimony and opinions of Defendant's expert R. Rhodes Trussell, Ph.D.  *See* Motion *in Limine* No. 4 (Docket No. 103).

- Evidence relating to the foreseeability and/or the historical development of knowledge regarding the health effects of perchlorate. *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the foreseeability and/or historical development of knowledge regarding the health effects of Defendant's fertilizers. *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the foreseeability and/or historical development of knowledge regarding the risk of environmental contamination associated with perchlorate.  *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the foreseeability and/or historical development of knowledge regarding the risk of environmental contamination associated with Defendant's nitrate fertilizers.  *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the detections of low levels of perchlorate in groundwater prior to the 1990s.  *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the foreseeability of the adoption of a California drinking water standard for perchlorate.  *See* Motion *in Limine* No. 6 (Docket No. 105).

- Evidence relating to the health effects of substances other than perchlorate.  *See* Motion *in Limine* No. 9 (Docket No. 109).

///
///

- • Evidence relating to the City's operation of, response to perchlorate at, and treating decisions regarding, wells that are not the subject of this action.  *See* Motion *in Limine* No. 10 (Docket No. 111).

- • Evidence relating to *Mejdrech v. Lockformer*, 2003 WL 22078388 (N.D. Ill. Sept. 9, 2003).  *See* Motion *in Limine* No. 11 (Docket No. 112).

In addition to the above evidentiary issues, there are a number of objections to proposed trial exhibits, as reflected in the parties' Joint Exhibit List (Docket No. 133), and there will likely be objections to designated portions of deposition testimony.

### G.   Issues of Law

There are four key issues of law that remain unsettled:

The first issue is the applicability of the "economic loss rule."  Defendant takes the position that the economic loss rule, which precludes recovery of damages in tort actions for injury to the defective product or consequent loss of profits without any claim of personal injury or damage to other property, bars the City's claim.  The City takes the contrary view that the economic loss rule is simply inapplicable because the allegedly defective product – *i.e.*, Defendant's fertilizers – has caused damage to other property – *i.e.*, the City's groundwater.  The City has also submitted evidence that its water rights constitute a possessory interest in real property, and that perchlorate contamination of water constitutes physical damage to such property.  This issue has been fully briefed in connection with Defendant's motion for summary judgment.

The second issue is the statute of limitations.  Defendant takes the position that this action is barred by the three-year statute of limitations because perchlorate was detected in the City's wells more than three years before the City filed the case.  The City maintains that, while contamination constitutes actual physical injury, the City did not suffer actual <u>and</u> appreciable harm until October 18, 2007,

when California promulgated the perchlorate MCL, because that was when it reasonably began to act to respond to the contamination in the specific wells at issue in this case.  The City's position is grounded in black letter law and published federal case law addressing application of California limitations law in the context of a groundwater contamination case.  The City also maintains that statute of limitations must be analyzed on a well-by-well basis, based on the same, applicable case law.  This action, which was commenced within three years of the MCL, is therefore timely.  This issue has been fully briefed in connection with Defendant's motion for summary judgment, and is also, in part, the subject of the City's pending Motion *in Limine* No. 10.

The third issue is the applicability of the "consumer expectations" test for proving a design defect.  Defendant takes the position that the consumer expectations test is not appropriate for this case because the users of Defendant's fertilizers did not have any expectation that the injury suffered by the City would, or would not, occur.  The City maintains that the consumer expectations test is appropriate because the ordinary users of Defendant's fertilizers were capable of forming an expectation that fertilizers used to supply nutrients to plants would not harm local groundwater supplies.  This issue is briefed in the City's Motion *in Limine* No. 1 and Defendant's Motion *in Limine* No. 1.

The fourth issue is whether the City has standing to sue in strict products liability as a "bystander."  The City maintains that bystander liability is well recognized under California law and that it has standing to pursue the claim asserted in this case.  This issue was raised for the first time in Defendant's Motion *in Limine* Nos. 1 and 2, but should have been raised earlier.

## II.   BIFURCATION OF ISSUES (L.R. 16-4.3)

The City does not seek bifurcation of any issues for trial.

1    **III.    JURY TRIAL (L.R. 16-4.4)**

2          California law confers a right to a jury trial on all issues of fact in actions for

3    recovery of tort damages, such as this case.  *See* Cal. Code Civ. P. § 592.  The City

4    made a timely demand for jury trial by including a jury demand with its original

5    complaint filed in State court.  *See* Fed. R. Civ. P. 81(c)(3)(A) ("A party who,

6    before removal, expressly demanded a jury trial in accordance with state law need

7    not renew the demand after removal.")  The only issues that might be tried to the

8    Court are Defendant's equitable affirmative defenses, if any of them apply to the

9    City's claim.  *See* Section I(E) above.

10   **IV.    ATTORNEYS' FEES (L.R. 16-4.5)**

11         The City is not claiming attorneys' fees at this time.  The City reserves the

12   right to seek attorneys' fees after trial pursuant to Federal Rule of Civil Procedure

13   37(c)(2) for attorneys' fees incurred in proving matters that Defendant failed to

14   admit during discovery.

15         Defendant's Answer includes a prayer for attorneys' fees without specifying

16   the grounds for that request.  The City is not aware of any legal or factual basis for

17   Defendant's claim.

18   **V.    ABANDONMENT OF ISSUES (L.R. 16-4.6)**

19         The City has not abandoned any issues presented in the City's First

20   Amended Complaint, which asserts a single cause of action.

21

22   DATED: December 13, 2011                    Respectfully submitted,

23

24                                    By:  _____/s/_____

25                                         Victor M. Sher
                                         Todd E. Robins
26                                         Esther L. Klisura
                                         Jed J. Borghei
27                                         SHER LEFF, LLP
                                         450 Mission Street, Suite 400
28                                         San Francisco, CA 94105
                                         Telephone: (415) 348-8300

1 | Facsimile: (415) 348-8333

2

3

4 | Arnold M. Alvarez-Glasman
Andrew L. Jared
5 | ALVAREZ-GLASMAN & COLVIN
13181 Crossroads Parkway, North
6 | Suite 400 – West Tower
City of Industry, CA 91746
7 | Telephone: (562) 699-5500
Facsimile: (562) 692-2244
8
Attorneys for Plaintiff CITY OF POMONA
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28